UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WAYNE WASHINGTON,

NOT FOR PUBLICATION

            Petitioner,

  -against-

MEMORANDUM
AND ORDER

ANDREW CUOMO, ATTORNEY GENERAL
of the STATE of NEW YORK,

06 CV 6477 (CBA)

          Respondent.
------------------------------------------------------------X
AMON, United States District Judge:

Petitioner Wayne Washington filed his original petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in this Court on December 1, 2006 alleging four grounds for relief:

(1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; (3) newly discovered

evidence; and (4) a "ground" referred to by Washington as "Deoxyribonucleic Acid Testing."

Washington later amended his petition to add a fifth claim for ineffective assistance of appellate

counsel. For the reasons stated below, Washington's petition, as amended, is denied.

I.    <u>Background</u>

On April 26, 2002, following a jury trial, Washington was convicted of three counts of

Robbery in the First Degree, two counts of Robbery in the Second Degree, one count of Burglary

in the First Degree, one count of Criminal Possession of Stolen Property in the Fifth Degree, and

one Count of Criminal Possession of a Controlled Substance in the Seventh Degree. He is

currently serving concurrent terms of imprisonment of 25 years for each count of first degree

robbery and first degree burglary, 15 years for the second degree robbery, and one year each for

the possession counts.

At trial, the people offered proof that, on the night of May 21, 2001, Washington and an accomplice pushed their way into the apartment of June Ashby and Denise Young at 60 Clarkson Avenue, in Brooklyn. Washington, armed and wearing a mask for most of the robbery, took jewelry, money, and crack cocaine from Young and her guests, Lori Ramos, Ricardo Ramos, and Steve Holly. Washington and his accomplice also threatened to kill everyone in the apartment, bound the victims with duct tape and rope, and the accomplice groped Lori Ramos.

A 911 call surreptitiously placed by Lori Ramos alerted police to the robbery in progress, and the audiotape from this call recorded portions of the robbery. Upon the arrival of the police, Washington and his accomplice fled down the fire escape. As he escaped, Washington removed his mask and was viewed by Young. Upon reaching the ground, the perpetrators found themselves in an enclosed area at the rear of the building. The accomplice fled through a small hole in a fence, but Washington was apprehended by Police Officer Scott Chin. He was found sweating and standing next to a pile of clothes that matched the description given by the victims of clothes worn by the masked robber.

Washington claimed that he had come to the building to buy drugs, but Officer Chin found jewelry that had just been taken from the victim's apartment in Washington's pocket. Additionally, a piece of the duct tape that had been used to bind the victims was found on Washington's shoe. Minutes later, Young identified Washington as the man who had wielded the gun, and she, Ricardo Ramos, and Steve Holley identified the items of jewelry recovered from the defendant as their stolen property.

Washington was initially represented by assigned counsel Toshia Foster and Michelle Maxian, Esq. Washington testified before the grand jury that he had never been in the building

2

in which the robbery was committed. In addition to grand jury testimony from Washington, Officer Chin, and the victims, a witness identified as Carol Bailey provided testimony that has been characterized as evidence of Washington's alibi. The indictment was filed on June 12, 2001.

Beginning on or about January 12, 2002, Washington was represented by Michael Harrison, Esq., who had been retained by Washington's mother. Mr Harrison promptly hired a private investigator to assist in the preparation of the defense. On May 11, 2002, after trial and conviction, Washington, *pro se*, filed motions to set aside the verdict based on numerous claims of ineffective assistance of counsel. The motions were denied.

The trial court did order a hearing on a motion to set aside the verdict on the basis of newly discovered evidence, namely, the May 7, 2002 affidavit of Dorothy Culley. Culley claimed, both in her affidavit and at the hearing, that Young had approached her days after the robbery and asked her to falsely claim that Washington was Culley's boyfriend. Culley further alleged that Young had told her that the robbery was set up by Young and that Young was attempting to prove Washington's guilt in order to "getaway with the money."[1] Culley testified that she refused to help, and that a week later, Young approached her again to no avail. Culley testified that the second time Young appeared to have been beaten by the people from whom she stole the money–apparently Young's drug suppliers. Finally, Culley claimed that Young offered her payment for this false testimony. Culley claimed that she was initially afraid to become involved in the case and had chosen not to do so. She therefore had not made herself available to

---

[1] The trial judge noted that Young's alleged theory–that the fact that Washington was dating Culley leads to the inference that he committed the robbery, was attenuated at best, if not entirely illogical.

the defense attorney (Harrison) or his investigator and had refused Washington's brother's attempt to get her to help prior to trial. Additionally, Culley admitted that the prosecutor had visited her apartment prior to the trial but that she had lied and told him that she knew nothing about the robbery. The prosecutor left his card but Culley never called him. The trial court denied the motion to set aside the verdict referring to the story told by Culley as "beyond the imagination of [the] Court."

On direct appeal, Washington was represented by Lynn W. L. Fahey and Reyna E. Marder, Esq. On appeal, Washington raised only ineffective assistance of trial counsel on the basis that counsel "devised a preposterous defense that the robbery was set up by the complainants to steal money from their drug supplier, elicited evidence undermining the only potential defense [Washington] had and argued against that defense, failed to conduct the most basic preparation for trial, cursed and screamed at [Washington] in front of the jury, and gave rambling and incoherent opening and closing statements." (Def's App. Br. at 3.) By decision dated March 15, 2004, the Appellate Division, Second Department affirmed the conviction. See People v. Washington, 5 A.D.3d 615 (2d Dep't 2004). On June 4, 2004, Washington's application for permission to appeal to the New York State Court of Appeals was denied. People v. Washington, 3 N.Y.3d 650 (2004).

Subsequently, in a *pro se* motion dated May 17, 2005, Washington moved to vacate the judgment of conviction pursuant to C.P.L. § 440.10. In that motion, Washington raised four grounds: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; (3) newly discovered evidence; and (4) trial court errors. In a memorandum opinion dated November 22, 2005 (the "440.10 Op."), the State Supreme Court (the "440.10 Court") denied Washington's

4

motion, finding that many of Washington's claims were procedurally barred for various reasons–including his failure to raise some of them on direct appeal–and that the remaining claims were without merit. Washington moved for leave to appeal the 440.10 Court's decision, and on August 15, 2006, the Appellate Division denied that application.

Finally, in a *pro se* application dated August 29, 2006, defendant moved for a writ of error coram nobis on the ground that he was denied the effective assistance of appellate counsel. In an order dated January 30, 2007, the Appellate Division denied Washington's coram nobis petition, stating that "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel." People v. Washington, 36 A.D.3d 947 (2d Dept. 2007). On May 22, 2007, the Court of Appeals denied Washington's application for leave to appeal that decision. See People v. Washington, 8 N.Y.3d 992 (2007).

## II.    Discussion

### A.    Ineffective Assistance of Trial Counsel

Washington claims that his trial counsel was ineffective for six reasons: (1) he failed to investigate and prepare for trial; (2) he failed to interview witnesses; (3) he failed to utilize certain exculpatory fingerprint evidence; (4) he cursed at Washington in open court; (5) he pursued a defense strategy that placed the defendant at the crime scene; and (6) he divulged strategy to the prosecutor. For present purposes, the Court will organize these claims into three groups. The first three grievances can be placed under the heading of "failure to prepare". The fourth claim stands alone under the category of "courtroom demeanor". The last two claims relate to counsel's defense strategy. Respondent argues that some of these claims are procedurally barred and that they are all without merit. The Court will address the procedural

5

issues first and then proceed to the merits.

### 1. Procedural Bars

With respect to Washington's ineffective assistance of counsel claim, respondent first contends that several of the grounds raised are procedurally barred from habeas review. (Resp's Br. at 5-7.) Respondent notes that the 440.10 Court found certain aspects of the ineffective assistance claim to be barred. Specifically, it held that defendant's claims based upon counsel cursing at him and presenting a defense that placed Washington at the crime scene were barred by C.P.L. § 440.10(2)(a) because they had been determined on the merits by the Appellate Division on direct appeal. (440.10 Op. at 7.) Additionally, the 440.10 Court held that Washington's claims that trial counsel failed to investigate or discover exculpatory evidence were barred pursuant to C.P.L. 440.30(4)(b) for failure to provide sworn allegations as to all essential facts. (Id. at 9-11.) Respondent here argues that these holdings constitute independent and adequate state law grounds that bar this Court's review absent a showing of cause and prejudice. The Court disagrees.

A federal claim is generally barred from federal review when a state court decision adjudicating the issue relies on a state procedural rule that is independent of the federal question and adequate to support the judgment. See Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 729 (1991). The Second Circuit has held that a state court decision resting on Section 440.10(2)(a) does not give rise to a procedural bar preventing a federal habeas court from reviewing the merits of a claim. See Silverstein v. Henderson, 706 F.2d 361, 368 (2d Cir. 1983).

Although "[a] split of authority exists within the Second Circuit regarding whether a

denial of a motion pursuant to CPL § 440.30(4)(b) is an 'independent and adequate' state procedural rule barring federal habeas review," Williams v. Duncan, No. 9:03-CV-568 (LEK/RFT), 2007 WL 2177075 at *13 (N.D.N.Y. July 27, 2007) (citing cases recognizing the split as well as cases reaching either result); Gonzalez-Pena v. Herbert, 369 F. Supp. 2d 376, 388-89 (W.D.N.Y. 2005) (citing cases on both sides of the debate), the better reasoned authority has recognized that because "section 440.30(4) applies, by its own terms, only when a trial court denies a motion to vacate '[u]pon considering the merits,'" it does not act as a procedural bar to a federal habeas claim." Williams, 2007 WL 2177075 at *14 (alteration in original); see also Smith v. Artus, No. 06-CV-0178 (NG)(SMG), 2007 WL 1350276 (E.D.N.Y. May 7, 2007) (proceeding directly to the merits of a claim that had been dismissed in state court on 440.30(b) grounds); Russillo v. Mellas, No. 03-CV-792S, 2007 WL 748437 at *8 (W.D.N.Y. March 7, 2007); Gonzalez-Pena, 369 F. Supp. 2d at 389. Accordingly, the Court will proceed to address the merits of all of Washington's ineffective assistance of trial counsel claims.

     2.    The Merits

    The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard of review for a federal habeas court reviewing a merits decision of a state court. Under the statute, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); see also Price v. Vincent, 538 U.S. 634, 639-40 (2003).

With respect to the "contrary to" clause, "'[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [federal law] incorrectly.'" Price, 538 U.S. at 641 (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Rather, a state court's decision is "contrary to" clearly established federal law "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'" Id. at 640 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. In the Second Circuit, "it is well-established . . . that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotations omitted); see also Williams, 529 U.S. at 411 (for writ to issue under the "unreasonable application" clause, state court application of federal law must be unreasonable, not merely incorrect). With these standards in mind, the Court will now turn to the grounds raised in Washington's amended petition.

In Strickland v. Washington, the Supreme Court established the test for constitutionally ineffective assistance of counsel, requiring both that counsel's performance be deficient and that this deficiency result in prejudice to the defendant. The Court stated:

First, the defendant must show that counsel's performance was deficient. This

8

requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). The Supreme Court has further observed that the right to effective assistance of counsel is a right to a meaningful adversarial proceeding, not a right to flawless representation: "The right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted–even if defense counsel may have made demonstrable errors–the kind of testing envisioned by the Sixth Amendment has occurred." United States v. Cronic, 466 U.S. 648, 656 (1984). And, in the specific context of a section 2254 petition, the Second Circuit has recognized that the demanding ineffective assistance standard is made more demanding by the deferential standard of review prescribed by the AEDPA. See Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003) (noting that "the heavy burden of showing ineffective assistance" is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under the [AEDPA]").

The first prong of the Strickland test, deficient performance, requires a defendant to establish that "counsel's performance was so unreasonable under prevailing professional norms that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment." United States v. Kurti, 427 F.3d 159, 163 (2d Cir. 2005). When making this inquiry, "the Court 'must indulge a strong presumption that counsel's conduct falls within the wide range of

9

reasonable professional assistance,' that '[t]here are countless ways to provide assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a client in the same way.'" Kurti, 427 F.3d at 163 (quoting Strickland, 466 U.S. at 689) (alterations in original). With respect to the prejudice inquiry, the Strickland Court explained that it requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694; see also Hemstreet v. Greiner, 491 F.3d 84, 89 (2d Cir. 2007).

As noted above, Washington's first through third and fifth and sixth ineffective assistance claims all relate to either a failure of counsel to prepare or to a disagreement with counsel's strategy. Such preparation and/or strategy claims generally do not give rise to successful ineffective assistance of counsel claims. See United States v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999) ("[A]ctions or omissions that 'might be considered sound trial strategy' do not constitute ineffective assistance."). As the Court in Strickland itself explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

466 U.S. at 689 (internal citations and quotations omitted). The Court further noted:

> As the Court of Appeals concluded, strategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgements support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Id. at 691. In this case, all of the "investigation/preparation" and "strategy" decisions made by counsel were the sort of reasonable discretionary choices that do not rise to the level of ineffective assistance of counsel.

First, with respect to the "investigation/preparation" grounds, Washington claims that he failed to interview witnesses and failed to utilize certain fingerprint evidence. With respect to the alleged failure to interview witnesses, Washington has provided two examples, Dorothy Culley and Carol Bailey.[2] The Court will address each in turn.

As was outlined above, Dorothy Culley, in her own testimony, stated that she had intentionally avoided involvement with the investigation at any point prior to trial. (6/14/02 Tr. at 3-4, 6-8.) She admitted that she had been contacted by Washington's brother and that she did not make herself available to either defense counsel or to the private investigator he had hired. (Id. at 3-4.) She further admitted that, when she was visited by the prosecutor before trial, she told him that she knew nothing about the robbery.[3] (Id. at 6-8.) Under these circumstances, the

_____

[2]The 440.10 Court addressed counsel's failure to call these witnesses at trial, but not necessarily the failure to interview them. (440.10 Op. at 14.) The Court will construe Washington' petition broadly to allege both claims.

[3]It was only after trial that Culley suddenly came forward and offered exculpatory testimony, which prompted the trial court to hold a hearing on a motion to set aside the verdict. As was noted above, the trial court concluded that Culley's testimony was "highly suspect" for several reasons, and noted that her story as a whole was "beyond the imagination of [the] Court."

Court is persuaded that it was well within counsel's reasonable discretion not to continue to attempt to get information or evidence from someone who he had no reason to believe had any to offer. It was not error for counsel to fail to call Dorothy Culley at trial because, at that time, she had neither indicated that she had any relevant information to share nor that she was inclined to aid the defense.

Washington also claims that counsel was ineffective for failure to interview or call his alibi witness, Carol Bailey. Bailey testified at Washington's grand jury hearing. As the 440.10 Court noted, Bailey was far from an effective alibi witness. First, Bailey did not recall precisely at what time the defendant left her apartment.[4] Second, she stated that he was wearing clothes similar to those worn by the masked robber, a fact that was obviously not helpful to Washington.[5] (440.10 Op. at 15.) It is also worth noting that this so-called alibi would have been contradicted by evidence that Washington was apprehended by Officer Chin behind the building in question, just minutes after the robbery occurred, with jewelry on his person that had been taken from inside Young's apartment and duct tape on his shoe that had been used to bind the victims. Considering that Washington was essentially apprehended at the scene of the crime, it was a reasonable strategic decision for counsel to forgo attempting to present an alibi defense, assuming Bailey's testimony even established an alibi. Accordingly, the failure to further pursue

---

(6/14/02 Tr. at 22-24.) Accordingly, the motion to set aside the verdict was denied. (Id. at 24.)

[4] The 911 call reporting the robbery was placed at approximately 10:40 A.M. Only in her affidavit, dated April 30, 2003 (over a year after Washington's conviction), did Bailey claim that Washington did not leave her apartment until 11:00 P.M., at which time she claims he was overcome by a craving for marijuana.

[5] The Court has reviewed Bailey's grand jury testimony and agrees with the 440.10 Court's description of the testimony.

12

these potential witnesses was a reasonable strategic decision that does not constitute deficient performance under <u>Strickland</u>, and the state courts' rejection of this claim was therefore not unreasonable.

Washington also argues that counsel failed to investigate/prepare based on his failure to utilize certain fingerprint evidence.[6] However, the very exhibit he submits to substantiate this claim establishes that no such evidence existed. The Police Laboratory Examination reports that no viable prints were found at the crime scene. (Pet's Exh. F1.) Washington provides no basis from which the Court might rationally infer that exculpatory fingerprints were found at the crime scene and were available to counsel. Further, counsel did appropriately point to the lack of fingerprint evidence in order to undermine the strength of the prosecution's case. (4/24/02 Tr. at 203.) Accordingly, counsel's performance was not deficient on the basis that he failed to utilize fingerprint evidence.

Finally, Washington argues that counsel simply failed to investigate and prepare. Washington has provided no specific examples except for the two rejected above. The Court notes that counsel began representing defendant just a few months before trial, and he promptly hired a private investigator. Defense counsel cannot be faulted for the fact that there was little–if any–exculpatory evidence for the investigator to find. Upon taking over as defense counsel, Mr. Harrison promptly litigated a motion to dismiss the indictment that had been filed by

---

[6]As far as the Court can tell, Washington has not specifically raised the alleged failure to use fingerprint evidence as a basis for ineffective assistance of counsel in state court below. Therefore, it is possibly unexhausted. <u>See</u> 28 U.S.C. § 2254(b)(1). Nevertheless, in light of Washington's submissions in state court concerning trial counsel's general failure to prepare as a basis for ineffective assistance of counsel, the Court will address the merits of his particularized version of that claim here.

Washington's initial counsel and that he had adopted and supplemented. Mr. Harrison then competently represented Washington at the <u>Dunway</u>, <u>Mapp</u>, and <u>Wade</u> hearing. Washington has given the Court no basis on which to conclude that counsel was constitutionally ineffective leading up to trial. Accordingly, the Court concludes that the state court's rejection of the ineffective assistance of counsel claims on the basis that Mr. Harrison was inadequately prepared for trial was reasonable.

Washington raises two additional issues: that Harrison pursued a defense that placed Washington at the crime scene and that he divulged this strategy to the prosecution. With respect to the former grievance, the basic theory of the defense is precisely the sort of strategic decision that is typically left to the sound professional judgment of trial counsel. The Court fails to see how Mr. Harrison could have argued that Washington was not at the crime scene when he was apprehended only minutes after the crime occurred just behind the building in which it took place, with the victims' jewelry in his pocket and duct tape on his shoe that had been used in the crime. The fact that there was essentially no viable defense in this case speaks to the strength of the state's case–not the ineffectiveness of trial counsel. Moreover, with respect to the argument that counsel "divulged strategy", Washington has not indicated precisely what information was improperly divulged or when.[7] To the extent that Washington is unhappy about counsel's level of cooperation with the state, again, such matters are strategic decisions generally left to the discretion of trial counsel.

_____

[7]To the extent that this claim is premised on divulging strategy to the prosecutor, and not about disagreement with counsel's strategy, it appears to be unexhausted. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). Nevertheless, the Court will exercise its power to proceed to the merits of an unexhausted claim. <u>See</u> <u>id.</u> § 2254(b)(2).

In sum, Washington's complaints about trial counsel's investigation and the defenses raised at his trial amount to disputes over strategy, which do not provide the basis for ineffective assistance of counsel claims. As to these claims, the Court agrees with the conclusion of the Appellate Division on direct appeal: "The defense counsel presented a reasonable defense, interposed appropriate objections, and effectively cross-examined witnesses. Unsuccessful trial strategies and tactics do not constitute ineffective assistance of counsel." Washington, 5 A.D.3d at 615-16.

The sixth and final basis on which Washington's ineffective assistance of trial counsel claim rests is counsel's apparent outburst directed at Washington at trial and in front of the jury. Even assuming *arguendo* that this act constituted deficient representation for the purposes of the first prong of the Strickland test, this claim fails because Washington has not demonstrated any resulting prejudice. In light of the overwhelming evidence against Washington, the Court fails to see how the result of the proceeding might have been any different absent this momentary lapse in decorum. Accordingly, the state court did not unreasonably apply Strickland in determining that counsel's yelling at Washington did not rise to the level of constitutionally ineffective assistance of counsel. Therefore, for all of the above reasons, Washington's claim for habeas relief based on the ineffective assistance of trial counsel is denied.

B.    Ineffective Assistance of Appellate Counsel

In addition to ineffective assistance of trial counsel, Washington also advances a claim of ineffective assistance of appellate counsel, stating three grounds: (1) appellate counsel erroneously placed defendant at the scene of the crime instead of pursuing a theory that the robbery was a sham devised by Young; (2) appellate counsel failed to mount an attack on the

15

Young's credibility, whose testimony was contradicted by Culley; and (3) appellate counsel refused to actively involve Washington in his appeal, refused to include certain additional issues, potentially causing the court to refuse to grant Washington's request to file a supplemental *pro se* brief. Because the appellate division decided these (and other) claims on the merits in the context of Washington's coram nobis proceeding, the Court must analyze them under the deferential AEDPA standard.

The Strickland standard laid out above in the discussion of Washington's trial counsel claim also provides the framework for evaluating ineffective assistance of appellate counsel claims. See Smith v. Robbins, 528 U.S. 259, 285 (2000) ("[T]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in Strickland v. Washington."); see also Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Accordingly, Washington must demonstrate that appellate counsel's performance was deficient, that is, that her performance was unreasonable under prevailing professional norms, and that but for her unreasonable performance, there is a reasonable probability that the outcome of the proceeding would have been different.

With respect to the "deficient performance" half of the inquiry, it is well-established that appellate counsel is not obligated to raise every non-frivolous issue on appeal. The Supreme Court has explained that "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of rigorous and effective advocacy." Jones v. Barnes, 463 U.S. 745, 750-54 (1983); see also Smith v. Murray, 477 U.S. 527, 535-36 (1986) (the process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being

evidence of incompetence, is the hallmark of effective advocacy."). As the Barnes Court explained:

> There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. . . . A brief that raises every colorable issue runs the risk of burying good arguments–those that, in the words of the great advocate John W. Davis, 'go for the jugular,'–in a verbal mound made up of strong and weak contentions.

463 U.S. at 752-53 (internal citation omitted). Accordingly, the Second Circuit has directed lower courts not to second-guess the reasonable professional judgment of appellate attorneys regarding which issues to raise on appeal. See Tsirizotakis v. LeFevre, 736 F.2d 57, 65 (2d Cir. 1984); Mayo, 13 F.3d at 533. Therefore, in order to establish that appellate counsel was deficient for failure to include an issue on appeal, it must be shown that she "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533.

Washington's first two claims, that appellate counsel placed him at the crime scene and that she failed to attack Young's credibility as contradicted by Culley's testimony, maintain that his counsel (both trial and appellate) erred by failing to pursue a theory that the robbery was a sham engineered by Young. As previously discussed, Washington's alibi defense and his claims of a sham robbery are undermined by the facts that the 911 tape recorded much of the robbery in progress, and that Washington was apprehended immediately after the robbery just behind the building, sweating, next to a pile of clothing matching the description given by the victims, with the victims' jewelry on his person, and with duct tape which had been used to bind the victims on his shoe. Moreover, Young identified him as one of the perpetrators shortly thereafter and the

trial court found that Culley's testimony in support of a sham robbery theory was entirely illogical and not worthy of belief. It was therefore well within appellate counsel's reasonable professional discretion to concede that Washington was at the crime scene, and the Appellate Division's rejection of these claims was a reasonable application of Strickland.

Washington has also failed to establish a factual basis for his claim that appellate counsel failed to make him "an active party to the appellate process." In her affirmation, submitted in the coram nobis proceeding, counsel expressly states that she wrote to Washington well in advance of filing the brief, informing him of the grounds for appeal that would be raised. (Aff. ¶ 9.) She then sent him a copy of the brief the day before it was filed, and informed him that he would need to write to the court within 30 days in order to gain permission to file a supplemental *pro se* brief rasing other issues. (Id. ¶ 8.) She further provided him with the name and address of the person to whom such an application should be directed. (Id.) That the court denied his request to do so cannot be blamed on counsel.

To the extent that counsel chose not to raise issues other than ineffective assistance of trial counsel, such a strategy was well within counsel's judgment based on her belief that that claim had significantly better chances of success than any other. While Washington asserts that counsel refused to include "additional issues of concern" that he wanted her to address in the brief, he neither identifies those issues nor explains why they might have been meritorious claims that could have resulted in a successful appeal. In short, Washington has not established that counsel's level of communication with him regarding his appeal was constitutionally deficient, and the Appellate Division's conclusion as to this claim was therefore not an unreasonable application of Strickland. Accordingly, Washington's claim for habeas relief based on

18

ineffective assistance of appellate counsel is denied.

D.    Prosecutorial Misconduct

1.    Procedural Default

Washington's third ground for habeas relief is prosecutorial misconduct. Specifically, Washington claims that the state failed to alert him to certain evidence and that it solicited perjured testimony at trial. Washington raised these same issues in his 440.10 motion, and they were rejected. The 440.10 Court wrote:

> C.P.L. 440.10(2)(c) mandates that a court deny a motion to vacate judgment if all the necessary facts relating to the legal issue appear 'on the record.' The 'on the record' bar applies whether or not the issue (as opposed to the facts) has been preserved for appellate review. As long as the issue could have been raised on appeal but was not, the defendant is mandatorily barred from raising the claim on a motion to vacate the judgment. All of the defendant's claims regarding prosecutorial misconduct . . . appear on the record.

(440.10 Op. at 7-8 (internal citations omitted).) Respondent argues that the prosecutorial misconduct claims are procedurally barred. The Court agrees.

As stated above, where a habeas petitioner has procedurally defaulted on a federal constitutional claim in state court, the default constitutes an independent and adequate state law ground for decision and bars federal habeas review of the underlying federal claim. Unlike the bars set forth in sections 440.10(2)(a) and 440.30(b), a decision resting on section 440.10(2)(c) at the state level does constitute an independent and adequate state law ground that generally bars federal habeas review. See Sweet v. Bennett, 353 F.3d 155, 140 (2d Cir. 2003).

Where a state procedural default has occurred, a federal habeas court can only address the underlying federal claims on the merits if the petitioner makes "a showing of cause for the default and prejudice to the petitioner." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994); see

also <u>Murray v. Carrier</u>, 477 U.S. 478, 485-86 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977). Though not precisely defined, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." <u>Amadeo v. Zant</u>, 486 U.S. 214, 222 (1988) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).

In this case, Washington has not demonstrated cause for his procedural default nor prejudice resulting therefrom. One objective external factor that has been held to constitute cause is constitutionally ineffective assistance of counsel, but in order for this to excuse the procedural default, it must first be presented to the state court as its own independent constitutional claim. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000). While Washington did present claims for constitutionally ineffective assistance of both his trial and appellate counsel to the state courts, as was explained above, those claims are without merit. Moreover, Washington has not identified any other objective factor external to the defense that would have impeded appellate counsel's efforts to raise the issue of prosecutorial misconduct on direct appeal. Therefore, Washington has not demonstrated cause for his procedural default.

Even if Washington had shown cause for the procedural default, there would be no resulting prejudice in this case. Were the Court to reach the merits of the prosecutorial misconduct claims, they would be rejected. The 440.10 Court, in addition to denying Washington's prosecutorial misconduct claim on procedural grounds, also analyzed its merits.[8]

_____

[8]Even if the state court treats the merits of a procedurally barred claim in the alternative, federal review will still be precluded on the independent and adequate state law ground so long as the state court expressly relies in a plain statement on the procedural ground as an adequate basis for disposing of the claim. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10 (1989). In this case the state court did so.

With respect to his claim that the prosecution withheld evidence in violation of Brady v. Maryland, the 440.10 Court held that the allegedly withheld evidence, the Culley testimony, was not exculpatory,[9] and further lacked credibility such that no prejudice would have resulted from the state's failure to provide her to the defense. (440.10 Op. at 18.)[10] With respect to his claim that the prosecutor knowingly solicited perjury, the court held that the people's witnesses merely suffered from inconsistences in testimony not rising to the level of perjury, and thus denied the claim. (Mem. at 20-21.) The Court agrees with both conclusions.

First, with respect to Washington's claim that the prosecution withheld evidence, the Supreme Court has long since established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). A violation of Brady has three components: "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the prosecution, either wilfully or inadvertently; and (3) prejudice must have ensued." Brown v. McKinney, 358 F. Supp. 2d 161, 172 (E.D.N.Y. 2005) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)); see also, United States v. Coppa, 267 F.3d 132, 140 (2d Cir. 2001). Pursuant to

---

[9]Prior to trial, Ms. Culley had told the defendant's brother and the Assistant District Attorney that she knew nothing about the robbery. Only after trial did she come forward with testimony that could be described as exculpatory.

[10]Washington also raised a New York state law claim–under People v. Rosario, 9 N.Y.2d 286 (1961)–based on the prosecution's alleged failure to turn over evidence. The court rejected that claim. (440.10 Op. at 19.) Because the Rosario claim is based entirely on New York state law, it does not provide a basis for federal habeas relief. See, e.g., Jones v. Poole, No. 06 Civ. 7172(NRB), 2007 WL 2456646 at *10 (S.D.N.Y. Aug. 21, 2007); Collins v. Artus, 496 F. Supp. 2d 305, 317 (S.D.N.Y. 2007); Goston v. Rivera, 462 F. Supp. 2d 383, 394-95 (W.D.N.Y. 2006); Brown v. McKinney, 358 F. Supp. 2d 161, 171 (E.D.N.Y. 2005).

the third component, the prosecution need not disclose all exculpatory and impeachment material, "it need disclose only material 'that, if suppressed, would deprive the defendant of a fair trial.'" Coppa, 267 F.3d at 135 (quoting United States v. Bagley, 473 U.S. 667, 675 (1985)); see also, Stickler v. Greene, 527 U.S. 263, 281 (1999) ("[S]trictly speaking, there is never a real "Brady violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); United States v. Payne, 63 F.3d 1200, 1209 (2d Cir. 1995) ("Undisclosed 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" (quoting Bagley, 473 U.S. at 682)); Brown, 358 F. Supp. 2d at 172 ("The standard for prejudice is whether the evidentiary suppression 'undermines our confidence' that the factfinder would have reached the same result.").

In this case, Washington has failed to establish a Brady violation because he has not identified any material exculpatory evidence that the state could have turned over. As previously noted, an Assistant District Attorney visited Dorothy Culley prior to the trial at which time she claimed to know nothing about the robbery. He left his business card should she decide to contact him, and she did not. She also made no effort to contact the defense despite the request of Washington's brother.[11] Only after trial did Culley suddenly decide to come forward with

_____

[11]Because the defense appears to have known just as much about Culley and what she was willing to say as the D.A., it is likely that the state did not "suppress" anything within the meaning of Brady. This provides an additional basis to reject Washington's claim on the merits. See United States v. Grossman, 843 F.2d 78, 85 (2d Cir. 1988) ("No Brady violation occurred here because Brady does not require the government to turn over exculpatory evidence 'if the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence.'" (quoting United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987)); see also Spiro v. Mitchell, 368 F.3d 603, 610 (6th Cir. 2004).

testimony that tended to exculpate Washington.[12] In short, there was no duty for the prosecution to turn over that which it did not have.

Second, with respect to Washington's claim that the state utilized perjured testimony to convict him, the Supreme Court has held that a conviction based on perjured testimony gives rise to a violation of the Due Process Clause of the Fourteenth Amendment. See Napue v. Illinois, 360 U.S. 264, 269 (1959). "Under this standard, the Court has said that the conviction must be set aside if (1) 'the prosecution knew, or should have known, of the perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)) (internal citation omitted).

Of course, in order to proceed to the test for whether or not a conviction violated the Due Process Clause because of the introduction of perjured testimony, it must first be shown that a government witness did, in fact, commit perjury. "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001) (citing United States v. Dunnigan, 507 U.S. 87, 94 (1993)). In this case, as the state court held, Washington has merely shown that some prosecution witnesses contradicted each other, not that perjury was committed. "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." Monteleone, 257 F.3d at 219; see also United States v. Sanchez, 969 F.2d 1409, 1415 (2d Cir.

---

[12]Though, as the 440.10 Court noted, her testimony was so incredible that even if in the prosecution's possession prior to trial, it likely would fail to meet the materiality/prejudice standard of Brady and its progeny.

1992) ("Differences in recollection alone do not add up to perjury. Under the circumstances of this case, the differences in testimony presented a credibility question for the jury, at most." (internal citations omitted)). Accordingly, Washington's claim for habeas relief based on the introduction of perjured testimony is without merit.

Washington has not demonstrated that prejudice would result from the failure of the Court to review these claims on the merits, and his procedural default will not be excused by the "cause and prejudice" standard.

A procedural default may only be excused in the absence of a showing of cause and prejudice when "the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." Edwards, 529 U.S. at 451. To meet this test, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him" had the alleged error not occurred. Schlup v. Delo, 513 U.S. 298, 327 (1995). In light of the strength of the evidence against him, Washington fails to meet this standard.

### 2. The Merits

The State court also reached the merits of these claims. It is clear that the state court's application of federal law with respect to the prosecutorial misconduct claims was far from unreasonable. Therefore, to the extent that the Court were to reach the merits of these claims, they would be rejected for the same reasons set forth above as to why Washington suffered no prejudice from the default.

### E. Newly Discovered Evidence Claims

Washington seeks habeas relief on the basis of newly discovered evidence, i.e., the Culley

24

testimony. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993); Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003). This is because "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution–not to correct errors of fact." Herrera, 506 U.S. at 400-01 (citing several other Supreme Court decisions).

It is true that a conviction based on evidence upon which no rational trier of fact could have found guilt beyond a reasonable doubt is a violation of the Due Process Clause of the Fourteenth Amendment, and that such a claim is therefore cognizable on federal habeas review. See Jackson v. Virginia, 443 U.S. 307, 313-24 (1979). However, this Due Process inquiry is limited to evidence that was on the record and before the trier of fact–it does not allow for the consideration of newly discovered evidence. See Herrera, 506 U.S. at 402 ("Jackson does not extend to nonrecord evidence, including newly discovered evidence."). Accordingly, Washington's claim of actual innocence based on newly discovered evidence does not state a federal constitutional violation that could provide a basis for habeas relief.

F.    DNA Testing

Finally, Washington seeks relief in the form of DNA testing of the sweatshirt found near his person at the time of his arrest. Although not entirely clear, Washington appears to argue that DNA testing will demonstrate a lack of his sweat, skin, or hair fibers on the clothing and thus would prove that the clothing did not belong to him. In the 440.10 Court, Washington based his request for DNA testing solely on a New York statute, C.P.L 440.30(1-a), which permits a court

25

to authorize DNA testing on specified evidence when, *inter alia*, the defendant can show a reasonable probability that, had the evidence been admitted at trial, it could have led to a more favorable verdict. The 440.10 Court denied Washington's request based solely on his failure to meet the requirements of the New York statute, finding that there was "no possibility that DNA testing would alter the verdict." (440.10 Op. at 23.) A federal court sitting in habeas jurisdiction may not review state court decisions that do not implicate federal constitutional claims. "A federal court may not issue the writ on the basis of a perceived error of state law." Pulley v. Harris, 46 U.S. 37, 41 (1984). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). As such, the 440.10 Court's decision on this issue is not appropriate for federal habeas review. If Washington intended to assert a federal due process right in his argument before the 440.10 Court, he needed to explicitly raise the federal issue in state court so as to put the state court on notice that they were to decide federal constitutional claims. McDonald v. Smith, No. 02-CV-6743 (JBW), 2003 WL 22284131 at *8 (E.D.N.Y. Aug. 21, 2003) (quoting Jelinek v. Costello, 247 F. Supp. 2d 212, 279 (E.D.N.Y. 2003). Washington gave no such notice; the DNA testing claim is therefore unexhausted and likely procedurally barred. Even if it were not barred, this Court is aware of no case establishing a federal constitutional right to DNA testing. Accordingly, Washington's claim for DNA testing does not provide a basis for habeas relief.

III.    Conclusion

For all of the foregoing reasons, Washington's petition for a writ of habeas corpus is denied. As this petition presents no "substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of the Court is directed to enter judgment and to close this case.


        SO ORDERED.

Dated:    Brooklyn, New York
          October 19, 2009

                                        /S/
                                    CAROL B. AMON
                                    United States District Judge

27